******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES
HENRY WATSON
(AC 41299)

DiPentima, C. J., and Keller and Noble, Js.

*Syllabus*

Convicted, following a jury trial, of the crimes of strangulation in the second
degree, assault in the third degree, unlawful restraint in the first degree
and threatening in the second degree, the defendant appealed to this
court. The defendant's conviction resulted from an incident in which
the defendant, who had been hanging out and drinking beer with the
victim, accompanied the victim to his apartment, where he restrained,
assaulted and choked her over the course of several hours, in different
areas of the apartment. On appeal, he claimed, inter alia, that the trial
court improperly made the determination of whether the charges of
assault and unlawful restraint were "upon the same incident" as the
strangulation charge for purposes of the statute ([Rev. to 2015] § 53a-
64bb [b]) that provides that no person shall be found guilty of strangula-
tion in the second degree and unlawful restraint or assault "upon the
same incident," but that such person may be charged and prosecuted
for all three offenses upon the same information. *Held*:
1. The defendant's unpreserved claim that the determination of whether the
charges were "upon the same incident" was a question of fact for the jury,
not the court, to determine was unavailing; this court has determined
previously, under similar factual circumstances, that it was proper for
the trial court, rather than the jury, to determine whether the charges
were "upon the same incident" for purposes of § 53a-64bb (b), and
denied the defendant's request that the present case be heard en banc
in order to overturn that prior case law.
2. The defendant could not prevail on his claim that the trial court violated
§ 53a-64bb (b) and his right to be free from double jeopardy when it
punished him for assault, unlawful restraint and strangulation, which
was based on his claim that the separate charges of assault and unlawful
restraint, as charged in the information and based on the evidence,
were not established as wholly separate claims from the strangulation:
although the defendant claimed that the fact that the information, which
alleged that all of the crimes occurred in the defendant's apartment at
approximately 2 a.m., indicated that the charges arose from the same
incident, the record revealed numerous criminal acts committed over
the course of a longer period of time that demonstrated that the charges
did not arise from the same act or transaction, including evidence that the
victim informed the police that the defendant kept her in his apartment
against her will for approximately nine hours and that the defendant
assaulted and chocked the victim in different areas of the apartment
for a few hours of this approximately nine hour period; moreover, the
victim's testimony established that the assault and the unlawful restraint
did not arise from the same incident as the strangulation, because even
though the conduct constituting assault and strangulation in the present
case did not occur in distinct locations, the fact that the assault and
strangulation involved distinct violent acts that resulted in distinct types
of physical injury supported the trial court's conclusion that those
charges did not arise out of the same act or transaction, and the defen-
dant's conduct toward the victim established unlawful restraint on a
separate basis from his acts of strangulation, as the defendant restrained
the victim in his apartment for approximately nine hours by taking the
victim's cell phones from her, restricting her movement to smaller areas
of the apartment and physically preventing her from escaping, none of
which occurred while the defendant was strangling the victim; accord-
ingly, because the defendant's double jeopardy claim was contingent
on whether the charges arose from the same act or transaction, and
because this court concluded that they did not, the defendant's double
jeopardy claim necessarily failed.
3. The defendant could not prevail on his claim that the trial court violated
his constitutional rights to confrontation and to present a defense by

restricting his cross-examination of the victim, which was based on his claim that he should have been allowed to question the victim regarding past conduct, including a call she had made to the police in May, 2017, concerning an incident of assault separate from that underlying the charges in this case; although the defendant couched his claim in terms of his constitutional rights, those rights entitled him only to elicit relevant evidence, and the trial court properly determined that the evidence regarding the May, 2017 police call was not relevant for the purposes of impeachment, and, therefore, the defendant's constitutional rights to confrontation and to present a defense were not violated.

Argued May 21—officially released September 3, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, strangulation in the second degree, assault in the third degree, unlawful restraint in the first degree and threatening in the second degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kavanewsky, J.*; thereafter, the court denied the defendant's motion to admit evidence regarding the sexual conduct of the victim; verdict of guilty of strangulation in the second degree, assault in the third degree, unlawful restraint in the first degree and threatening in the second degree; subsequently, the court denied the defendant's motion for a judgment of acquittal as to the charges of assault in the third degree and unlawful restraint in the first degree and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, James Henry Watson, appeals from the judgment of conviction, rendered following a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), strangulation in the second degree in violation of General Statutes (Rev. to 2015) § 53a-64bb (a),[1] and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The defendant claims that the trial court (1) improperly determined whether the charges of assault in the third degree and unlawful restraint in the first degree were "upon the same incident" as the charge of strangulation in the second degree for the purposes of § 53a-64bb (b); (2) violated § 53a-64bb (b) and his right to be free from double jeopardy when it punished him for assault in the third degree, unlawful restraint in the first degree and strangulation in the second degree; and (3) violated his right to confrontation when it restricted his cross-examination of the victim. We disagree and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On October 19, 2016, at approximately 3 p.m., the defendant and the victim were "hanging out" and drinking beer on the front porch of an apartment building at 850 Hancock Avenue in Bridgeport wherein the defendant resided. The victim stated that she needed to use the bathroom, and the defendant stated that she could use the bathroom in his apartment. The defendant accompanied the victim to his apartment, which was on the second floor of the building, and the victim went into the bathroom. When the victim tried to exit the bathroom, the defendant blocked the door and stated, "I'm going to get some of your fucking pussy."

The defendant ultimately allowed the victim to leave the bathroom, but he then blocked the victim's access to the front door, forcing the victim into the living room. The defendant closed the curtains in the living room and increased the volume on the radio that was playing. The victim later testified that she did not try to leave the apartment at this point because there was a "certain way" to open the front door, and she did not know how to do so.

The defendant then grabbed the victim and pushed her onto the couch in the living room while stating that he "wanted to get [the victim's] pussy." The victim attempted to push the defendant off of her, but the defendant held her down on the couch and began to rip off her pants and underwear. The defendant also punched and hit the victim in the face.[2]

Additionally, the defendant continually choked the victim and hit her in the face. Periodically, the choking

would cause the victim to have difficulty breathing. Whenever this happened, the victim would kick her feet at the defendant, and the defendant would briefly let go of her throat. Thereafter, the defendant would resume choking her. At one point during this episode, the defendant stated "I want to kill you" and "I know I'm going to pay for this." The victim asked the defendant to return her cell phones,[3] which he had taken from her prior to the first episode where he attacked her, so that she could call her son. The defendant did not return the victim's cell phones to her and continued to hit her repeatedly. In an attempt to resist the defendant, the victim bit his pinky finger. The victim also tried to run toward the door in order to escape from the apartment, but the defendant prevented her from doing so by grabbing the hood of the sweatshirt she was wearing.

After attacking the victim in the living room, the defendant brought her into his bedroom, threw her onto the bed, and commenced a second attack, continuing to hit and choke her. The defendant also ripped the victim's T-shirt off of her body and used it to choke her. Throughout this second episode, the defendant stated repeatedly that he wanted to kill the victim.

The defendant then took the victim back into the living room and threw her onto a different couch than he had thrown her onto earlier. During this third attack, the defendant "beat [the victim] some more" and choked her. Sometime thereafter, the defendant stopped attacking the victim. Even after the defendant stopped attacking the victim, he would not allow her to leave the apartment.

Sometime in the early morning, on October 20, 2016, the victim was able to convince the defendant to allow her to leave the apartment by begging him to let her go to the store to purchase a drink and promising that she would return to the apartment afterward. The defendant accompanied the victim outside of the apartment building, but she was able to run away from him.

The victim ran to a nearby gas station, where she asked an employee if she could use the phone to call the police because she had just been raped. The employee did not allow the victim to use the phone, so the victim left the gas station and continued walking down the street away from the defendant's apartment. While she was walking down the street, the victim saw an ambulance driving toward her. She waved down the ambulance and told the paramedics in the vehicle that she had been raped. One of the paramedics observed that the victim "had an abrasion of approximately four inches [on] the neck," as well as abrasions and swelling on her left eye and left ear.

The paramedics parked the ambulance at the intersection of Fairfield Avenue and Norman Street in Bridgeport and contacted the police. The police arrived

at approximately 2:30 a.m. and spoke with the victim. One of the police officers observed that the victim "had some red marks around her neck and some bruising to the face." The victim directed the police to 850 Hancock Street and informed them that the assault had occurred in an apartment on the second floor of the building. The police entered the building and spoke with the defendant in his apartment. The defendant admitted that he and the victim had sexual intercourse but claimed that it had been consensual. While the police were in the defendant's apartment, they noticed a pair of ripped women's underwear in the garbage can and took possession of them for evidentiary purposes. The police also asked the defendant whether he had in his possession the victim's cell phones and charging cord, because she had stated that they were "missing." The defendant gave the police the victim's cell phones and charger.

The police then brought the defendant down to the front of the building, where the victim was waiting. The victim identified the defendant as the individual who had attacked her, and the police placed him under arrest.

The victim then was transported to Bridgeport Hospital, where a nurse examined her and administered a sexual assault kit. The nurse observed that the victim "had ligature marks on her neck and some red marks and abrasions on her neck and chest." The victim complained of a headache and dizziness and stated that she had been punched in the face. The victim was prescribed Tylenol and Ibuprofen, as well as Meclizine for dizziness and Zofran or Ondansetron for nausea.

The defendant thereafter was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) (sexual assault), assault in the third degree in violation of § 53a-61 (a) (1) (assault), unlawful restraint in the first degree in violation of § 53a-95 (a) (unlawful restraint), strangulation in the second degree in violation of § 53a-64bb (a) (strangulation), and threatening in the second degree in violation of § 53a-62 (a) (1) (threatening). The substitute information alleged that all of the crimes of which he was accused had occurred on October 20, 2016, at approximately 2 a.m.

The defendant's case was tried before a jury in September, 2017. The jury returned a verdict in which it found the defendant guilty of the charges of strangulation, assault, unlawful restraint, and threatening, and not guilty of the charge of sexual assault. Before sentencing, the court ordered that the parties "submit a memorandum of law concerning whether and to what extent [§ 53a-64bb (b)] applies in the present case and, if so, the appropriate remedy to be implemented by the court at the time of sentencing."

On October 3, 2017, in response to the court's order,

the defendant filed a motion for a judgment of acquittal as to the charges of assault and unlawful restraint. On October 25, 2017, the state filed a response to the court's order, in which it requested that the court impose separate sentences on each of the charges of which the defendant was found guilty and deny the defendant's October 3, 2017 motion for a judgment of acquittal. The state argued that § 53a-64bb (b) did not prohibit punishment for each offense "because the jury reasonably could have found the defendant guilty of unlawful restraint and assault for discrete acts that were separate from the act of strangling the victim."

On December 1, 2017, the court heard argument on the defendant's motion for a judgment of acquittal. Defense counsel argued: "[I]t's our position that the incident itself that took place at . . . 850 Hancock Avenue was one transaction. Even though the transaction may have occurred over a time period extending an hour, two hours, three hours . . . . [T]herefore, [the defendant] should receive acquittals on [the counts of assault and unlawful restraint] pursuant to [§ 53a-64bb (b)] and be sentenced on the guilty verdict on the other two counts." In response, the state argued that the evidence presented at trial indicated that the assault and unlawful restraint were separate from the strangulation.

The court denied the defendant's motion for a judgment of acquittal and concluded that, based on the evidence presented at trial, the assault and unlawful restraint were not "upon the same incident" as the strangulation and, therefore, that § 53a-64bb (b) did not preclude the imposition of punishment for the counts at issue. The court sentenced the defendant on all the charges of which the jury had found him guilty, for a total effective term of twelve years of incarceration, execution suspended after seven years of mandatory incarceration, followed by three years of probation.[4] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly determined whether the charges of assault and unlawful restraint were "upon the same incident" as the charge of strangulation for the purposes of § 53a-64bb (b). Specifically, the defendant argues that whether the crimes were "upon the same incident" was a question of fact that should have been properly submitted to and decided by the jury, not the court.[5] We disagree.

Section 53a-64bb (b) provides in relevant part: "No person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information. . . ."

We note that the defendant argues that this claim is

preserved and, in the alternative, that it can be reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[6] We conclude that the claim was not preserved because the defendant never objected to the court determining whether the charges of assault and unlawful restraint were "upon the same incident" as the charge of strangulation. Thus, we assess whether *Golding* review is appropriate. We conclude that the record is adequate for review, as the trial court's remarks are set forth in the transcript of the sentencing hearing, and that the issue is of a constitutional magnitude because it implicates the defendant's right to a jury trial. See *State* v. *Morales*, 164 Conn. App. 143, 160, 136 A.3d 278, cert. denied, 321 Conn. 916, 136 A.3d 1275 (2016). We conclude, however, that the defendant cannot prevail on his claim because there was no constitutional violation.[7] See id.

In support of his claim, the defendant argues that *State* v. *Morales*, supra, 164 Conn. App. 159–61, wherein this court concluded that *a jury* is not required to determine whether crimes are "upon the same incident" for the purposes of § 53a-64bb (b), is "incorrect on both constitutional and statutory grounds." After filing his reply brief in this appeal, the defendant filed a motion in which he requested that the present case be heard en banc and that the panel overturn *Morales*. See, e.g., *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 68 n.9, 6 A.3d 213 (2010) ("[T]his court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." [Internal quotation marks omitted.]), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011). A panel of this court denied the motion. Thereafter, at oral argument before this court, the defendant conceded that the present case is controlled by *Morales*. We conclude that *Morales* controls our resolution of this issue.

In *Morales*, as in the present case, the trial court made factual findings as to whether the defendant's convictions of strangulation, unlawful restraint, and assault were "upon the same incident" and, therefore, whether the defendant could be sentenced on all three crimes under § 53a-64bb (b). See *State* v. *Morales*, supra, 164 Conn. App. 159, 160 n.10. The defendant in *Morales* claimed that the trial court's finding that the convictions were not upon the same incident violated *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), wherein the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Morales*, supra, 159–60. In *Morales*, this court concluded that the trial court's finding did not violate *Apprendi*

because the court "did not find any fact that enhanced the defendant's sentence beyond the statutory maximum permitted by the jury's verdict." Id., 161. Pursuant to our decision in *Morales*, we conclude that, in the present case, it was proper for the trial court, rather than the jury, to determine whether the charges were "upon the same incident" for the purposes of § 53a-64bb (b).

## II

The defendant next claims that the trial court violated § 53a-64bb (b) and his right to be free from double jeopardy when it punished him for assault, unlawful restraint and strangulation. Specifically, the defendant argues that "[t]he separate charges of assault and unlawful restraint, as charged in the information and based on the evidence in this case, were not established as wholly separate claims from the strangulation." We disagree.

We begin by noting that the defendant preserved this claim for appeal by filing a posttrial motion for a judgment of acquittal on October 3, 2017, in which he argued: "[T]o be compliant with [§ 53a-64bb (b)], the court should modify the verdict according to required law and direct acquittals to [the charges of assault and unlawful restraint]." See *State* v. *Brown*, 118 Conn. App. 418, 422, 984 A.2d 86 (2009) ("motion for judgment of acquittal on specific charge preserves charge for appeal"), cert. denied, 295 Conn. 901, 988 A.2d 877 (2010). Additionally, the defendant preserved this claim with regard to his right to be free from double jeopardy when, on October 26, 2017, he filed a memorandum in support of his motion for a judgement of acquittal, wherein he stated: "Pursuant to . . . [§] 53a-64bb (b) . . . *and* the double jeopardy protections provided through the fifth and fourteenth amendments [to] the United States constitution, and the Connecticut constitution, the defendant requests that this court enter acquittals on the convictions rendered on the counts of unlawful restraint . . . and assault . . . ." (Emphasis added.)

We next assess the defendant's claim with regard to § 53a-64bb (b). Whether the defendant's punishment for these charges violated § 53a-64bb (b) is a question of statutory construction over which this court has plenary review. *State* v. *Miranda*, 142 Conn. App. 657, 661–62, 64 A.3d 1268 (2013), appeal dismissed, 315 Conn. 540, 109 A.3d 452 (2015) (certification improvidently granted). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the

text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and its relationship to exiting legislation and to [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Buckland*, 313 Conn. 205, 224, 96 A.3d 1163 (2014), cert. denied,    U.S.    , 135 S. Ct. 992, 190 L. Ed. 2d 837 (2015).

The relevant text of § 53a-64bb, in which the phrase "the same incident" appears, provides as follows: "(a) A person is guilty of strangulation in the second degree when such person restrains another person by the neck or throat with the intent to impede the ability of such other person to breathe or restrict blood circulation of such other person and such person impedes the ability of such other person to breathe or restricts blood circulation of such other person.

"(b) No person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information. For the purposes of this section, 'unlawful restraint' means a violation of section 53a-95 . . . and 'assault' means a violation of section . . . 53a-61 . . . ."

"The manifest purpose of § 53a-64bb, so written, is to make an act of strangulation in the second degree, as defined in subsection (a) of the statute, separately punishable as a class D felony, whether that act, as committed in the circumstances of a given case, also supports a conviction for assault or unlawful restraint in any degree, or both, but not to enhance the punishment for that act beyond the five year maximum for a class D felony even if, as proven, it is also sufficient to constitute assault and/or unlawful restraint. By that logic, the same incident to which the statute refers is an incident of strangulation, necessarily involving restraint of another person by the neck or throat either with the intent to impede the ability of that person to breathe or to restrict the blood circulation of such other person and which, in fact, either impedes the ability of such other person to breathe or restricts his blood circulation, not an event or course of conduct in which an act of strangulation occurs, but is preceded, followed or even accompanied by other, separate acts of assault

or unlawful restraint not based, in whole or in part, upon one or more acts of strangulation. . . .

"[T]he question that must be answered in ruling on the defendant's challenge to his sentence is whether the factual basis on which he [was charged with assault and unlawful restraint] demonstrated conduct by the defendant, wholly separate from his strangulation of the victim . . . that established his guilt of [assault and] unlawful restraint . . . . If there is such conduct, then the defendant's separate convictions and sentences in this case did not violate § 53a-64bb." *State* v. *Miranda*, supra, 142 Conn. App. 663–64.

In support of his claim, the defendant argues that the fact that the information alleged that all of the crimes occurred in the same location, at the same time, indicates that the charges arose from the same incident. "[W]e [however] are not limited to a review of the state's information in order to determine whether the defendant's crimes arose from the same act or transaction. Our review of the case law leads us to conclude that the fact that the state charged him in the information with committing the subject crimes on the same date and at approximately the same time and place does not dispose of this portion of the . . . analysis; rather, we are permitted to look at the evidence presented at trial." *State* v. *Morales*, supra, 164 Conn. App. 152.

In the present case, although the state alleged in the information that the crimes occurred in the defendant's apartment at approximately 2 a.m. on October 20, 2016, the record reveals numerous criminal acts committed over the course of a longer period of time. In fact, there was evidence that the victim informed the police that the defendant kept her in his apartment against her will for approximately nine hours. For "[a] few hours" of this approximately nine hour period, the defendant assaulted the victim in different areas of the apartment, specifically, the living room and the bedroom. The assault consisted of the defendant hitting and punching the victim in the head and face. In addition to assaulting the victim, the defendant repeatedly choked her with his hands and, later, a T-shirt, which he had ripped off of the victim's body, making it difficult for the victim to breathe. While the defendant was choking the victim, he stated, "I want to kill you."

The defendant also argues that the victim's testimony "described actions that were wholly intertwined with the actions of . . . strangulation, not separate and discrete crimes." We are unpersuaded by this argument and conclude that the victim's testimony established that the assault and unlawful restraint did not arise from the same incident as the strangulation.

First, we assess whether the defendant's conduct toward the victim established assault on a separate basis from his act of strangulation. Section 53a-61 (a)

provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ." The assault in the present case, which was comprised of the defendant punching and hitting the victim in the head and face, caused the victim physical injury, as demonstrated by the bruising on her face and the abrasions and swelling on her left eye and ear. The victim complained of a headache and dizziness as a result of being punched in the face and the head. Although the assault and strangulation occurred relatively close in time, "[i]t is not dispositive in a double jeopardy analysis that multiple offenses were committed in a short time span and during a course of conduct that victimized a single person." *State* v. *Urbanowski*, 163 Conn. App. 377, 393, 136 A.3d 236 (2016), aff'd, 327 Conn. 169, 172 A.3d 201 (2017).

In support of his argument that the acts constituting assault were intertwined with the strangulation, the defendant attempts to distinguish the facts of the present case from those in *State* v. *Urbanowski*, supra, 163 Conn. App. 391. In *Urbanowski*, "the defendant threw the victim across a room in his residence, causing her to strike her head on a wall in the kitchen. Next, the defendant threw the victim into a porch area near the kitchen of the residence, causing further injury to her head. While the victim was still on the porch, the defendant repeatedly punched her in the face. Next, the defendant dragged the victim by her feet outdoors, down the driveway, at which time he punched and kicked the victim about the face and head. Finally, the defendant positioned the victim inside of her automobile, where he held her down and repeatedly strangled her by wrapping his hands around her neck and pushing." Id. This court concluded that the fact that the assault and strangulation involved distinct violent acts that resulted in distinct types of physical injury supported the trial court's conclusion that the charges did not arise out of the same act or transaction. Id., 392. As in *Urbanowski*, in which the assault caused the victim a brain injury and the strangulation caused the victim to be unable to breathe; id.; in the present case, the assault caused the victim a headache, dizziness, bruising on her face and abrasions and swelling on her left eye and ear, whereas the strangulation caused the victim to be unable to breathe and resulted in ligature marks around her neck. Thus, although the conduct constituting assault and strangulation in the present case did not occur in distinct locations, as it did in *Urbanowski*, we conclude that the state presented sufficient evidence to demonstrate that the charges did not arise upon the same act or transaction.

Next, we assess whether the defendant's conduct toward the victim established unlawful restraint on a separate basis from his acts of strangulation. Section 53a-95 (a) provides: "A person is guilty of unlawful

restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." "A person restrains another person, within the meaning of § 53a-95, when, inter alia, he restrict[s] a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty . . . by confining him . . . in the place where the restriction commences . . . without consent." (Internal quotation marks omitted.) *State* v. *Miranda*, supra, 142 Conn. App. 664.

In the present case, the defendant restrained the victim in his apartment for approximately nine hours, during which time the victim could not leave because she did not know how to open the front door. Moreover, the defendant had taken the victim's cell phones from her and would not allow the victim to call her son or otherwise seek help. During that nine hour period, the defendant also restricted the victim's movement to smaller areas of the apartment. Specifically, when the victim initially came up to the apartment to use the bathroom, the defendant stood in front of the bathroom door, making it impossible for her to leave the room. When the defendant finally moved aside and allowed the victim to exit the bathroom, he blocked the front door, forcing the victim to remain in the living room. When the victim tried to escape from the apartment, the defendant prevented her from leaving by grabbing the hood of the sweatshirt she was wearing. None of this conduct occurred while the defendant was strangling the victim.

The defendant argues that *Miranda* and *Morales*, wherein this court concluded that there was sufficient evidence to support a charge of unlawful restraint on a separate basis from a charge of strangulation, are distinguishable from the present case. In *Miranda*, there was evidence that the defendant confined the victim to a bathroom by pointing a flame in her direction. Id., 664–65. In *Morales*, the defendant restrained the victim by "grabb[ing] her" when she tried to escape through the front door. *State* v. *Morales*, supra, 164 Conn. App. 156. Although the defendant in the present case used his body, rather than a flame, to block the victim's exit, his actions, like those of the defendant in *Miranda*, made it impossible for her to leave the bathroom. Thus, contrary to the defendant's argument, we conclude that *Miranda* is factually similar to the present case. Additionally, like the defendant in *Morales*, who grabbed the victim when she tried to escape, there was evidence that the defendant in the present case physically prevented the victim's attempt to escape the apartment through the front door by grabbing the hood of the sweatshirt she was wearing. Thus, we find the defendant's attempts to distinguish these cases unavailing and conclude that the evidence presented at trial was sufficient to support the court's

finding that the charges of assault and unlawful restraint were based on separate acts.

We next turn to an evaluation of the defendant's argument that the court violated his right to be free from double jeopardy when it sentenced him for assault, unlawful restraint, and strangulation.

"A defendant's double jeopardy challenge presents a question of law over which we have plenary review. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Urbanowski*, supra, 163 Conn. App. 387–88.

The defendant's double jeopardy claim, like his claim that the court violated § 53a-64bb (b), is contingent upon whether the charges arose from the same act or transaction. See *State* v. *Miranda*, supra, 142 Conn. App. 665–66. Because we have concluded that the charges at issue in the present case did not arise from the same act or transaction, namely the incident of strangulation, the defendant's double jeopardy claim necessarily fails. The assault and unlawful restraint could have been established through acts distinct from the throttling of the victim.

III

Finally, the defendant claims that the court violated his constitutional rights to confrontation and to present a defense by restricting his cross-examination of the victim. Specifically, the defendant argues that he should have been allowed to question the victim regarding past conduct, including a call she made to the police in May, 2017, concerning a separate incident of assault from that underlying the charges in this case. We disagree.

The following additional facts are relevant to the present claim. On September 19, 2017, the defendant filed a motion to admit evidence regarding the sexual conduct of the victim pursuant to General Statutes § 54-86f.[8] The defendant argued that the evidence he sought to introduce was being "[o]ffered on the issue of the credibility of the [victim]" and was "[s]o relevant and material to a critical issue in the case that excluding it would violate [his] constitutional rights."

On September 25, 2017, before the victim began her testimony, the court heard argument on the motion. At this time, defense counsel proffered: "During some of our investigation of the [victim] in this case, it's come to our knowledge [that] there have been situations in the recent past where [the victim] has done this kind of conduct before, where she has basically lived with individuals for a couple of weeks with the lifestyle that [involves] a lot of drinking and drugs, and once the drinking and drugs sort of run out, there's a dispute between the parties who are engaged in the drinking and drugs, and sometimes the police are called and charges are filed. I have one incident—it's not an incident report but just a teletype where she called the police [in May, 2017]." Defense counsel clarified that the May, 2017 incident did not involve the defendant. The court stated that it would defer ruling on the motion until the state completed its direct examination of the victim.

After the state completed its direct examination of the victim, the defendant renewed his motion outside of the presence of the jury. At this point, defense counsel proffered that he had obtained a copy of the police dispatch report of the victim's May, 2017 police call. Defense counsel further stated: "[The victim] called the police and . . . told [the police dispatcher] that she was punched two days ago and bitten by a party she knows . . . . [T]he [police] dispatcher indicated that she sounded . . . intoxicated. . . . [The victim] call[ed] twenty minutes later, indicating that she was okay and didn't want an officer [dispatched]." Defense counsel argued that the evidence "goes to [the victim's] credibility."

The state objected to the admission of the evidence, and the court sustained the state's objection, stating: "I don't think that it is relevant in any respect to the issues the jury has to determine in this case. It's well after the fact here, and it's just . . . putting her in the light of somebody who drinks, calls the police, maybe changes her mind. It just has nothing to do with anything in this case. . . . And I just don't see the value of it for purposes of the jury deciding what the facts are here and its prejudicial value compared to any probative value . . . [is] extremely high."

As a preliminary matter, we set forth the applicable standard of review. "When a trial court improperly excludes evidence in a criminal matter, the defendant's constitutional rights may be implicated. It is fundamental that the defendant's rights to confront the witnesses against him and to present a defense are guaranteed by the sixth amendment to the United States constitution. . . . In plain terms, the defendant's right to present a defense is the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . .

The right of confrontation is the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . .

"Nevertheless, [i]t is well established that a trial court has broad discretion in ruling on evidentiary matters, including matters related to relevancy. . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion. . . . Further, [w]e have emphasized in numerous decisions . . . that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . A defendant may elicit only relevant evidence through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Citations omitted; internal quotation marks omitted.) *State* v. *Thomas*, 177 Conn. App. 369, 384–85, 173 A.3d 430, cert. denied, 327 Conn. 985, 175 A.3d 43 (2017); see also *State* v. *Rivera*, 169 Conn. App. 343, 380, 150 A.3d 244 (2016) ("[a] defendant . . . may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right [to present a defense] is not violated" [internal quotation marks omitted]), cert. denied, 324 Conn. 905, 152 A.3d 544 (2017).

We now turn to our analysis of the defendant's claim. As previously mentioned, he claims that the court violated his constitutional rights to confrontation and to present a defense by excluding evidence of the victim's prior conduct. Although the defendant couches his claim in terms of his constitutional rights, those rights entitle the defendant only to elicit relevant evidence, and thus, we begin this inquiry by assessing whether the evidence at issue in the present case was relevant for the purposes of impeachment, as the defendant argued at trial.

We conclude that the evidence sought regarding the victim's May, 2017 police call was not relevant for the purposes of impeachment. Contrary to the defendant's argument that this call showed that the victim engaged in a pattern of accusing individuals of assault and subsequently recanting such accusations, we observe that there was no proffered evidence that the victim recanted her statement to the police concerning the May, 2017 incident. When the victim called back the police shortly after her initial report, she stated that she was "okay" and did not want a police officer to be dispatched. In stating that she did not want the police to respond to her call, the victim did not, in any way, deny that the assault had happened or state that she had fabricated her earlier report. Rather, the victim

indicated that she had changed her mind about pursuing the matter with law enforcement.[9]

"It is axiomatic that the defendant bears the burden of establishing the relevance of the proffered testimony and that unless a proper foundation is established, the evidence is not relevant." (Internal quotation marks omitted.) *State* v. *Grant*, 68 Conn. App. 351, 358, 789 A.2d 1135 (2002). We conclude that the defendant failed to meet that burden and, therefore, that the court properly determined the evidence regarding the May, 2017 police call to be irrelevant. Thus, the defendant's constitutional rights to confrontation and to present a defense were not violated.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereinafter, unless otherwise indicated, all references to § 53a-64bb in this opinion are to the 2015 revision of the statute.

[2] The victim testified that during each of the three episodes in which she was attacked, the defendant had nonconsensual vaginal intercourse with her. We note that the jury acquitted the defendant of the charge of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).

[3] The victim had two cell phones, however, one was out of prepaid minutes and, therefore, was inoperable.

[4] Specifically, the court sentenced the defendant on the assault to one year of incarceration, execution suspended, followed by three years of probation; on the unlawful restraint to five years of incarceration, execution suspended after three years of mandatory incarceration, followed by three years of probation; on the strangulation to five years of incarceration, execution suspended after four years of mandatory incarceration, followed by three years of probation; and on the threatening to one year of incarceration, execution suspended, followed by three years of probation. The court imposed all of the sentences to run consecutively.

[5] The defendant also appears to argue, as part of this claim, that the court's determination of whether the charges were "upon the same incident" involved instructional error in that the trial court should have instructed the jury on § 53a-64bb (b), so that the jurors could have made the determination themselves. The defendant in *State* v. *Morales*, 164 Conn. App. 143, 156 n.7, 157 n.8, 136 A.3d 278, cert. denied, 321 Conn. 916, 136 A.3d 1275 (2016), made a similar argument, contending that, by failing to instruct on § 53a-64bb (b), the court committed instructional error. In *Morales*, this court concluded that the defendant waived any claim of instructional error under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). *State* v. *Morales*, supra, 156 n.7, 159–60 n.9. Similarly, in the present case, we conclude that, to the extent that the defendant has raised a claim of instructional error on appeal, he has waived this claim under *Kitchens*; see *State* v. *Kitchens*, supra, 482–83 ("when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal").

In the present case, the defendant never requested that the jury be instructed on § 53a-64bb (b). The court first provided counsel with a copy of its proposed draft charge on September 27, 2017. The draft charge, like the court's final charge delivered to the jury, did not contain an instruction pursuant to § 53a-64bb (b). The next day, the court twice solicited comments from counsel regarding the proposed charge. Defense counsel did not object to the proposed charge at either point that day. Thereafter, when the court instructed the jury, defense counsel again failed to object to the instructions as given or request that the court instruct the jury on § 53a-64bb (b).

On appeal, the defendant argues that he did not request that the jury be instructed on § 53a-64bb (b) or object to the instructions as given because the case was tried shortly after this court's decision in *Morales* was officially released and "the trial court would not have charged the jury that it was

to determine whether the charges occurred 'upon the same incident,' even if the defendant had made such a request." The defendant, however, has failed to provide any support for his argument that because he believed the court would refuse to instruct the jury on § 53a-64bb (b), his failure to object does not support a *Kitchens* waiver. To the contrary, this court previously has recognized that "[a] trial court has no independent obligation to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence . . . . Rather, it is the responsibility of the parties to help the court in fashioning an appropriate charge." (Internal quotation marks omitted.) *State* v. *Crawley*, 93 Conn. App. 548, 568, 889 A.2d 930, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006). As such, we conclude that any instructional error claimed by the defendant was waived under *Kitchens*.

[6] "Under [the *Golding*] test, [a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Dunbar*, 188 Conn. App. 635, 644–45, 205 A.3d 747, cert. denied, 331 Conn. 926, 207 A.3d 27 (2019).

[7] The defendant also argues that, even if this court declines to review this claim under *Golding*, it should do so under the plain error doctrine or this court's supervisory authority. We disagree.

We first note that plain error is a doctrine of reversibility, not reviewability. See *State* v. *Jamison*, 320 Conn. 589, 595–97, 134 A.3d 560 (2016). For the reasons set forth in part I of this opinion, we conclude that it was not error, let alone obvious error, for the court to determine that the charges of assault and unlawful restraint were not "upon the same incident" as the charge of strangulation. See id. Thus, the defendant has failed to demonstrate that this court should afford him relief under the plain error doctrine.

We likewise decline to exercise our supervisory authority to review this claim because we conclude that the defendant has failed to demonstrate that this claim is one that is relevant to the perceived fairness of the judicial system as a whole. See *State* v. *Elson*, 311 Conn. 726, 771, 91 A.3d 862 (2014).

[8] Although the defendant's motion was titled "Motion to Admit Evidence of Sexual Conduct," and cited § 54-86f, which contains the exceptions to the rape shield statute, the evidence he sought to introduce did not relate specifically to the victim's sexual conduct. In fact, at argument on the motion, defense counsel stated "I don't really intend to focus on . . . [the victim's] sexual history." Moreover, when the victim called the police in May, 2017, she did not allege that she had been sexually assaulted. Rather, she alleged that someone had punched and bitten her.

[9] The state also argues in its brief that the May, 2017 police call was irrelevant to the facts at issue in the case because it occurred almost seven months after the events giving rise to the present case and because it involved an individual other than the defendant. We, however, note that we must evaluate relevancy in accordance with the theory of admissibility and/or relevancy argued at trial, not on appeal. See *State* v. *Papineau*, 182 Conn. App. 756, 769–70, 190 A.3d 913, cert. denied, 330 Conn. 916, 193 A.3d 1212 (2018). Thus, we must assess the relevance of the May, 2017 police call exclusively for the purposes of impeachment.